UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| UNITED STATES OF AMERICA EX REL. ZONELL WASHINGTON | CIVIL ACTION |
| VERSUS | NO. 15-868 |
| MARK MORAD, ET AL. | SECTION "R" (3) |

# ORDER AND REASONS

## I. BACKGROUND

On March 19, 2015, plaintiff United States, through relator Zonell Washington, brought this *qui tam* False Claims Act civil action against defendants Mark Morad, Paige Okpalobi, Barbara Smith, Joe Ann Murthil, Latausha Dannel, Roy Berkowitz, Winston Murray, Divini Luccioni, Christopher White, Beverly Breaux, Medical Specialists of New Orleans, Interlink Health Care Services, Memorial Home Health, Inc., Lakeland Health Care Services, Lexmark Health Care, LLC, and Med Rite Pharmacy, Inc., d/b/a Medrite DME, Inc.[1] The complaint alleges that the defendants defrauded the United States by submitting false claims for Medicare reimbursement and used false records or statements to get the false claims

---

[1] R. Doc. 1.

approved, all in violation of 31 U.S.C. § 3729(a)(1)(A) and (B).[2]  The complaint further alleges that defendants conspired to defraud the Government in violation of 31 U.S.C. § 3729(a)(1)(C).[3]  The complaint seeks a judgment in an amount equal to three times the damages sustained by the United States as a result of defendants' actions, plus a civil penalty of not less than $5,500 and not more than $11,000 for each statutory violation.[4]

Defendants did not respond to the complaint or to their summonses. On October 10, 2016, after obtaining entries of default, relator filed a motion for default judgment as to each defendant, except Winston Murray.[5]  Relator also requested a hearing to determine the amount of damage suffered by the Government pursuant to Federal Rule of Civil Procedure 55(b)(2).[6]

On December 12, 2016, after finding that relator had alleged facts showing prima facie violations of 31 U.S.C. §§ 3729(a)(1)(A), (B), and (C), the Court entered a default judgment against the defendants.[7]  The Court also ordered relator to submit summary judgment-type evidence establishing the

---

[2]   *Id.* at 15-16 ¶¶ 55, 56, 57, 58, 60, 61.
[3]   *Id.* at 17 ¶¶ 63, 64, 65.
[4]   *Id.* at 17.
[5]   R. Doc. 41.  Relator never sought an entry of default as to defendant Murray and did not move for default judgment against him.
[6]   *See* R. Doc. 41 at 2.
[7]   R. Doc. 44.

2

amount of damages within 21 days of the entry of the default judgment.[8] In response, relator submits the judgments entered against defendants in the criminal case *United States v. Morad, et al*, No. CRIM. A. 13-101 (E.D. La.).[9] Additionally, the United States submits a statement of interest requesting that judgment be entered in favor of the United States and that the Court not treat related criminal proceedings against defendants as "alternate remedies" for the purposes of 31 U.S.C. § 3730(d)(5).[10]

## II. DISCUSSION

Under the False Claims Act, any person who violates the Act is "liable to the United States Government for a civil penalty of not less than $5,000 and not more than $10,000, as adjusted by the Federal Civil Penalties Adjustment Act of 1990 . . . , plus 3 times the amount of damages which the Government sustains because of the act of that person." 31 U.S.C. § 3729(a)(1). As adjusted, the penalty is now between $5,500 and $11,000. *See* 28 C.F.R. § 85.3(a)(9). The statutory penalty is not limited to "false

---

[8] R. Doc. 44 at 10.
[9] *See* R. Doc. 47-1 (Roy Berkowitz); R. Doc. 47-2 (Beverly Breaux); R. Doc. 47-3 (Barbara Smith); R. Doc. 47-4 (Christopher White); R. Doc. 47-5 (Latausha Dannel); R. Doc. 47-6 (Joe Ann Murthil).
[10] R. Doc. 49. The Government did not elect to pursue an alternate remedy here, and thus the Court will not treat the criminal proceedings against defendants as alternate remedies.

claims," but attaches to "all fraudulent attempts to cause the Government to pay out sums of money." *United States v. Neifert-White Co.*, 390 U.S. 228, 233 (1968); *see also United States v. Bornstein*, 423 U.S. 303, 312 (1976) (noting that False Claims Act imposes penalties "for the commission of acts which cause false claims to be presented"); *United States ex rel. Schwedt v. Planning Research Corp.*, 59 F.3d 196, 199 (D.C. Cir. 1995) ("Each individual false claim or statement triggers the statute's civil penalty.").

### A. Damages Sustained by Government

As evidence of the damages that the Government has sustained as a result of defendants' actions, relator submits the judgments against the defendants in the criminal case against them.[11] The judgments indicate that defendants Berkowitz, Breaux, Smith, White, Dannel, and Murthil caused the Government losses of $4,952,816, $2,057,179.48, $9,484,939.85, $2,272,241.96, $2,377,938, and $14,147,295.28, respectively.[12] The Court's finding on the amount of damages suffered by the Government due to the actions of each defendant is sufficient proof in the False Claims Act context. *See United States v. Boutte*, 108 F.3d 332, 1997 WL 73792, at *1 (5th Cir. Feb.

---

[11] At the time relator submitted this evidence, defendants Mark Morad, Paige Okpalobi, and Divini Luccioni had not yet been sentenced.
[12] R. Doc. 47-1 at 5; R. Doc. 47-2 at 5; R. Doc. 47-3 at 5; R. Doc. 47-4 at 5; R. Doc. 47-5 at 5; R. Doc. 47-6 at 5.

4

10, 1997) ("The criminal court's finding that the Government's loss was $301,627 is *prima facie* proof of that fact."). Further, the Supreme Court has established that an order of restitution in a criminal case and a subsequent civil penalty for the same acts do not violate the Double Jeopardy Clause. *See Hudson v. United States*, 522 U.S. 93, 98-99 (1997), *abrogating United States v. Halper*, 490 U.S. 435 (1989).

Caselaw makes clear that defendants' participation in a conspiracy to defraud the government renders them jointly and severally liable for the total amount of loss suffered by the government and the total amount of civil penalties. *See Peterson v. Weinberger*, 508 F.2d 45, 49 (5th Cir. 1975); *Mortgages, Inc. v. U.S. Dist. Court for Dist. of Nev. (Las Vegas)*, 934 F.2d 209, 212 (9th Cir. 1991) ("Where one or more persons have committed a fraud upon the government in violation of the FCA, each is joint and severally liable for the treble damages and statutory penalty."); *United States v. Bd. of Educ. Of City of Union City*, 697 F. Supp. 167, 177 (D.N.J. 1988) (False Claims Act case finding that conspiracy to violate the False Claims Act results in joint and several liability "for *all* of the damages and penalties against each of [the defendants]") (emphasis in original); *Kelsoe v. Fed. Crop Ins. Corp.*, 724 F. Supp. 448, 453 (E.D. Tex. 1988); *United States v. Cabrera-Diaz*, 106 F. Supp. 2d 234, 242 (D.P.R. 2000) ("[W]hen two or more persons act in

5

concert in violation of the False Claims Act, they are jointly and severally liable.") (citations omitted). Further, this includes the defendants who have not yet been sentenced in the criminal case and the corporate defendants who were not charged with a crime. *See United States v. Hangar One, Inc.*, 563 F.2d 1155, 1158 (5th Cir. 1977) (citing *United States v. Ridglea State Bank*, 357 F.2d 495 (5th Cir. 1966)); *United States v. O'Connell*, 890 F.2d 563, 568-69 (1st Cir. 1989); *Cabrera-Diaz*, 106 F. Supp. 2d at 242 ("Individuals and corporations can be sued together in one action, with each being jointly and severally liable for the total treble damages and civil penalties sought.") (citing *United States v. Coop. Grain & Supply Co.*, 476 F.2d 47 (8th Cir. 1973)). Therefore, whatever the total amount of damages and penalties, defendants are jointly and severally liable for that amount.

Relator's evidence of damages, while establishing various loss amounts for each defendant, does not establish whether the losses are independent of each other, *i.e.*, whether the largest loss amount of $14,147,295.28 includes the lower loss amounts. Instead, Relator solely asks for a judgment of $14,147,295.28.[13] Thus, given the absence of evidence indicating that the defendants' loss amounts should be added, the Court finds relator's evidence

---

[13] R. Doc. 47 at 3.

6

establishes that the total amount of damage sustained by the Government is $14,147,295.28.

## B. Statutory Penalties

As discussed above, the statutory penalties under the False Claims Act are not limited to each violation of the Act. But relator has submitted no evidence or argument as to *how many* acts or false claims or statements defendants made. The Court will not presume or guess at the actual number of the false claims or statements made in the absence of evidence. Thus, as each defendant has been found to have violated sections 3729(a)(1)(A), (B), and (C), the Court finds that each defendant is liable for three statutory penalties.

Each statutory penalty cannot be less than $5,500 or more than $11,000, but the Court has discretion to determine the appropriate amount within that range. *See Cook Cty., Ill. v. United States ex rel. Chandler*, 538 U.S. 119, 132 (2003). In determining the amount, courts have taken a "totality of the circumstances" approach, looking at factors such as the seriousness of the misconduct, the knowledge of the defendants, the amount of damages suffered by the United States, and general fairness. *See, e.g.*, *United States ex rel. Miller v. Bill Harbert Intern. Const., Inc.*, 501 F. Supp. 2d. 51, 56, 56 n.5 (D.D.C. 2007) (noting factors and collecting cases); *United*

*States v. Rogan*, 459 F. Supp. 2d 692, 727 (N.D. Ill. 2006) (same). Here, each defendant participated in a wide-ranging conspiracy to defraud the Government of millions of dollars. The Government suffered at least $14,000,000 in damages, and likely more. The defendants' conduct was calculated, deliberate, egregious, and designed to provide them with significant personal gain. But the Court is mindful that the defendants either have been or will be ordered to pay restitution to the Government as a result of their criminal convictions. Therefore, the Court will not order the maximum penalty, and finds $7,500 to be appropriate. As there are 15 defendants, each with three FCA violations, the total statutory penalty is $337,500.

### C. Total Amount of Liability and Relator's Share

The False Claims Act provides that any person who violates the Act "is liable to the United States for a civil penalty of not less than [$5,500] and not more than [$11,000], . . . plus 3 times the amount of damages which the Government sustains because of the act of that person." 31 U.S.C. § 3729. Three times the amount of damage here is $42,441,885.84, and as established above the total statutory penalty is $337,500, bringing the total amount of defendants' joint and several liability to the United States to be $42,779,385.84.

As relator, Zonell Washington is entitled to between 25 and 30 percent of this amount, plus reasonable attorneys' fees, expenses, and costs. *Id.* § 3730(d)(2). The Court has discretion to determine if relator should receive the maximum 30 percent. In considering whether to award more than 25 percent, district courts consider, *inter alia*, the significance of the information provided by the relator to the government, and the extent of the relator's contribution to the culmination of the False Claims action, including the relator's time, effort, and expenses. *See United States ex rel. DRC, Inc. v. Custer Battles, LLC*, No. 04-199, 2009 WL 3756343, at *2 (E.D. Va. Oct. 14, 2009) (citing S. Rep. 99-345, at 28 (1990), *reprinted in* 1986 U.S.C.C.A.N. 5266, 5293); *United States ex rel. Rigsby v. State Farm Fire and Cas. Co.*, No. 06-433, 2014 WL 691500, at *7 (S.D. Miss. Feb. 21, 2014). Relator seeks the maximum 30 percent, but has made no argument as to why this case warrants 30 percent instead of 25. Additionally, this matter has been pending only for two years, and the defendants' default status means that relator has spent minimal time and effort in achieving this judgment. Therefore, the Court finds that relator is entitled to no more than the statutory minimum of 25 percent of the Government's share. As such, relator is entitled to $10,694,846.46.

### D. Attorneys' Fees and Costs

Finally, relator seeks reasonable attorneys' fees and costs. Though the Fifth Circuit has not directly addressed what standard to use to determine reasonable attorneys' fees in *qui tam* False Claims Act cases, other circuits and other district courts in this Circuit have used the lodestar method. *See United States v. Cmty. Health Sys., Inc.,* No. 09-1565, 2015 WL 3386153, at *7 (S.D. Tex. May 4, 2015) (citing *United States ex rel. Vuyyuru v. Jadhav*, 555 F.3d 337, 356-57 (4th Cir. 2009); *Gonter v. Hunt Valve Co., Inc.*, 510 F.3d 610, 616 (6th Cir. 2007)); *United States ex rel. Rigsby*, 2014 WL 691500, at *9.

Relator's motion submits no evidence on either attorneys' fees or costs. Therefore, relator shall have 14 days from the date of entry of this order to submit a detailed affidavit establishing reasonable attorneys' fees and costs under the applicable legal standard.

### III. CONCLUSION

For the foregoing reasons, the United States is awarded damages in the amount of $42,779,385.84, and relator is awarded 25 percent of that amount in accordance with 31 U.S.C. § 3730(d)(2). Relator has 14 days from the date

of entry of this order to submit a detailed affidavit establishing reasonable attorneys' fees and costs.

New Orleans, Louisiana, this __5th__ day of April, 2017.

_____
SARAH S. VANCE
UNITED STATES DISTRICT JUDGE